UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| JOHN FRANCIS MORAN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:03-cv-847 |
| | ) | |
| v. | ) | Honorable David W. McKeague |
| | ) | |
| RAY WOLFE, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded no contest to one count of solicitation to commit murder, MICH. COMP. LAWS § 750.157b(2), and guilty to one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The trial court sentenced him on March 20, 2002, to imprisonment for two to twenty years on the solicitation conviction and two years on the felony-firearm conviction. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

I. THE COURT ABUSED ITS DISCRETION BY DENYING PRODUCTION OF THE CONFIDENTIAL INFORMANT OR INTERVIEWING THE INFORMANT IN CAMERA.

II. TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION TO DISMISS BASED ON ENTRAPMENT WAS CLEARLY ERRONEOUS ON THE COURT.

Respondent has filed an answer to the petition (docket #8) stating that Petitioner waived his claims by pleading guilty, and that his claims are without merit. Upon review and applying the AEDPA standards, I agree that Petitioner waived his claims by his pleas. Accordingly, I recommend that the petition be denied.

**Procedural History**

    **A. Trial Court Proceedings**

On January 16, 2001, Petitioner was charged in Macomb County with two counts of Solicitation to Commit First-Degree Murder and one count of possession of a firearm during the commission of a felony. The alleged targets of the solicitation were Petitioner's ex-wife and her new husband. Following a preliminary examination held on February 8, 2001, the district court bound Petitioner over to the Macomb County Circuit Court.

Petitioner filed a motion to dismiss the charges on the ground that he was entrapped. The entrapment hearing commenced on July 5, 2001. Officer Joshua Lewis of the Mount Clemens Police Department testified that he first became involved with Petitioner through Detective Grammatico. Grammatico learned from one of his informants that a person named "John" was trying to hire someone to commit a murder. (Entrapment Hearing Transcript I ("EH Tr. I") 5, docket 16.) Grammatico gave Lewis a cell phone number that was provided by the informant. (EH Tr. I, 6.) The informant told John that someone named "Tony" would be calling him in reference to a murder-for-hire. (EH Tr. I, 7-8.) Lewis successfully reached John on the second call. (EH Tr. I, 7.) Lewis identified himself as "Tony," and arranged a meeting with John. (EH Tr. I, 7-10.) Just before the meeting, Lewis called the confidential informant to see what he had told John about him. (EH Tr. I, 13-14.)

Lewis met Petitioner "John" Moran in a parking lot in Mount Clemens on the afternoon of January 15, 2001. (EH Tr. I, 10.) Petitioner got into the passenger side of Lewis' car. (EH Tr. I, 12.) After first name introductions, Lewis asked Petitioner, "What's the situation?" (EH Tr. I, 12.) Petitioners responded that "he had two people that he wanted taken care of." (EH Tr. I,

12.) Lewis construed that to mean that he wanted two people murdered because that is what the confidential informant had told him. (EH Tr. I, 12.) Lewis proceeded to ask how he wanted it done, to which Petitioner responded, "You're the expert. What do you think?" (EH Tr. I, 15.) Petitioner provided Lewis with personal information about the intended hits, "Laura" and "Scott." (EH Tr. I, 15-17.) Petitioner indicated that he had contacted someone else to commit the murders the year before, but he had taken the money and not done the job. (EH Tr. I, 16.) After discussing the matter with Petitioner for about an hour, Lewis agreed on a plan to murder Laura and Scott in their home on the weekend of January 27, when the two children were scheduled to be at another family member's house. (EH Tr. I, 16-19.) Petitioner asked Lewis how much it would cost. (EH Tr. I, 19.) Lewis gave him a price of $4000, but agreed to accept down payment of $1600. (EH Tr. I, 19-20.) Petitioner, who was low on funds, suggested that Lewis cover the balance by stealing items from the victims' home. (EH Tr. I, 20.) Lewis agreed. Lewis further indicated that he would call Petitioner in one week to verify that the children would be gone on the weekend of January 27, and to arrange for payment of the $1600. (EH Tr. I, 24.)

After the meeting, a Shelby Township officer went by the address Petitioner provided for Laura and Scott and confirmed the information Petitioner gave Lewis as to the types of cars driven by Laura and Scott, etc. (EH, Tr. I, 32.) Later on the same evening, Lewis called Petitioner, and told him that he needed to meet with him again. (EH Tr. I, 25.) They met at about 9:30 p.m. in another parking lot in Mount Clemens. (EH Tr. I, 27.) After Petitioner got into Lewis' car, Lewis told him that he was having a hard time locating Laura and Scott's house and asked him to draw a map. (EH Tr. I, 27.) Petitioner drew a map with paper and pen provided by Lewis. Lewis also offered to lower his down payment price to $1000. (EH Tr. I, 28.) When Petitioner drove away

from the second meeting, he was pulled over by Warren police officers and arrested. (EH Tr. I, 34.)

At the conclusion of the hearing, the defense moved to continue the hearing until the confidential informant could be produced or until the Court conducted an in-camera interview of the informant. On July 11, 2001, the trial court denied Petitioner's request to disclose the confidential informant or to conduct an in-camera inquiry. The court found that the informant's only involvement in the case was providing the initial lead and phone number, which was not sufficient to defeat the privilege afforded to informants under state law.

Further entrapment proceedings were held on October 11 and 15, 2001, during which Detective Grammatico and Petitioner gave testimony. Final arguments on Petitioner's motion to dismiss the charges on grounds of entrapment were held on October 24, 2001. (Entrapment Hearing Transcripts II -IV, dockets ## 17-19.) The trial court issued an opinion and order on December 27, 2001, denying Petitioner's motion to dismiss the charges. The trial court concluded that Petitioner had not been entrapped under Michigan law. The court found "no sufficient showing the police has control over the informant such that the police's activity would induce criminal conduct on the part of defendant. The Court is therefore convinced the informant was not a 'police agent' for purposes of entrapment. Accordingly, the Court is satisfied defendant was not entrapped, as there is no sufficient showing the police engaged in impermissible or reprehensible conduct." (Citations omitted.)

On January 10, 2002, Petitioner pleaded no contest to one count of Solicitation to Commit Murder and pleaded guilty to the felony-firearm charge. (Plea Tr., 4, docket #20.) In exchange for his plea, the prosecutor dismissed the other count of Solicitation to Commit Murder and recommended that the trial court sentence Petitioner to no more than two years on his minimum

sentence for his solicitation conviction. At the sentencing hearing held on March 20, 2002, the trial court sentenced Petitioner to imprisonment for two to twenty years on the solicitation conviction to be served consecutive to a two-year sentence for the felony-firearm conviction.

### B. Direct Appeal

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on February 19, 2003, raised the following claim for relief:

> DEFENDANT ASSERTS THE TRIAL COURT'S DECISION DENYING HIS MOTION TO DISMISS BASED ON ENTRAPMENT WAS CLEARLY ERRONEOUS AND REQUESTS THE COURT TO VACATE HIS PLEA AND SENTENCE AND DISMISS THE CASES.
>
> A.   THE COURT ABUSED ITS DISCRETION BY DENYING PRODUCTION OF THE CONFIDENTIAL INFORMANT OR INTERVIEWING THE CONFIDENTIAL INFORMANT IN CAMERA.
>
> B.   THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION TO DISMISS BASED ON ENTRAPMENT WAS CLEARLY ERRONEOUS.

(*See* Def.-Appellant's Br. on Appeal, docket #22.) The Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented. (*See* Mich. Ct. App. Ord., docket #22.) Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court raising the same claim as presented in the Michigan Court of Appeals. By order entered September 29, 2003, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., docket #23.)

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 ("AEDPA"). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the fact of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.), *cert. denied*, 124 S. Ct. 535 (2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**Discussion**

Respondent maintains that Petitioner waived his claims when he pleaded guilty. It has long been the case that an unconditional guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981). Also, a plea of no contest or nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982) ("Like a plea of guilty, a plea of nolo contendre constitutes a waiver of all so-called 'non jurisdictional defects' . . . ").

A guilty plea is valid if it is entered knowingly and voluntarily as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). Petitioner does not allege that his pleas were not knowing and voluntary. During the plea colloquy, the trial court addressed Petitioner and explained on the record the significance of his pleas and the constitutional rights that he would be waiving. (Plea Tr., 11-13.) Petitioner was informed of the consequences of his pleas and the maximum sentences that he faced on each count. (Plea Tr., 11.) Petitioner indicated, under oath, that he understood the consequences of his pleas and freely entered them to the reduced charges. (Plea Tr., 11-13.) Petitioner was also asked whether any promises were made to induce him into pleading guilty and he answered in the negative. (Plea Tr., 12-13.)

The voluntary and intelligent character of Petitioner's plea agreement is further evidenced by the fact that the plea agreement was favorable to him and accepting it was a reasonable and prudent decision. Petitioner's punitive exposure, had he been convicted at trial of solicitation

to commit murder, would have been life imprisonment; instead, Petitioner was sentenced to imprisonment for two to twenty years. Petitioner does not contend that he is actually innocence of the charges. Thus, among the alternatives available to Petitioner, the pleas were a voluntary and intelligent choice. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991). Because Petitioner entered a valid guilty plea and plea of no contest, his claims are barred from habeas review. Parenthetically, while the Court need not reach the merits of Petitioner's claim in light of his waiver, it should be noted that entrapment is not a constitutional defense, and, thus, cannot form a basis for habeas corpus relief. *See Sosa v. Jones,* 389 F.3d 644 (6th Cir. 2004).

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:  May 23, 2005                               /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).